UNITED STATES of America,

v.

Dennis ROBINSON, Defendant.

Criminal No. 97–0071(PLF).

United States District Court,
District of Columbia.

Dec. 5, 1997.

John Gidez, Assistant U.S. Attorney, Washington, DC, for U.S.

Gerald Fisher, Fisher & Hansen, PC, Washington, DC, for Dennis Robinson.

*OPINION*

PAUL L. FRIEDMAN, District Judge.

This case requires the Court to resolve whether a court's decision to depart downward under the Sentencing Guidelines because, the defendant's criminal history category overstates his criminal background has any impact on a defendant's eligibility for the statutory exception to the otherwise mandatory minimum sentence.

Dennis Robinson was indicted in two counts for the unlawful distribution of cocaine base (Count One) and the unlawful distribution of cocaine base within 1,000 feet of a school (Count Two) for a single distribution of cocaine base on April 10, 1996. Pursuant to a plea agreement with the government, he pled guilty to Count One on June 6, 1997. Because the controlled substance involved was cocaine base or crack, the defendant understood that he faced a statutory mandatory minimum sentence of ten years in prison and that the mandatory minimum trumped the normally applicable guideline

sentencing range under the United States Sentencing Guidelines ("USSG") (Nov.1997).[1]

When Mr. Robinson appeared for sentencing on August 7, 1997, the Court raised the question whether he might be eligible for the "safety valve" exception to the mandatory minimum sentence under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, because it appeared that Mr. Robinson had only one criminal history point under the Guidelines, placing him in Criminal History Category I. *See* U.S.S.G. Ch. 5, Pt. A, Sentencing Table.[2] The Court therefore postponed sentencing so that Mr. Robinson could be debriefed by the government in an effort to satisfy an essential predicate to application of the safety valve—that the defendant "truthfully provide[] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan...." U.S.S.G. § 5C1.2. The debriefing took place on September 10, 1997, and Mr. Robinson was sufficiently forthcoming.

On August 7, 1997, however, the prosecutor advised the probation officer that he had recently learned of a possible error in the presentence investigation report and that there was a possibility that the defendant had additional criminal history points. The report stated that Mr. Robinson was sentenced to one year of probation for a prior narcotics possession conviction, but the prosecutor's information indicated that the sentence was actually a two-year term of probation which had not yet expired at the time of the instant offense. Further investigation by the probation officer revealed that the defendant was indeed on probation for two years and that the sentence of probation was not successfully completed until January 10, 1997, *after* commission of the instant offense on April 10, 1996.[3] Under U.S.S.G. § 4A1.1(d), two additional criminal history points therefore had to be added for commission of an offense while under a criminal justice system sentence, in this case probation, to the one point awarded for the prior misdemeanor narcotics possession conviction

---

1. Because of the amount of cocaine base or crack involved (60.32 grams), the base offense level under the Guidelines is Level 32, *see* U.S.S.G. § 2D1.1(a)(4); with a three level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), the adjusted offense level would be a Level 29. At Level 29, absent application of the statutory mandatory minimum, the guideline range would be 87 to 108 months if Mr. Robinson was in Criminal History Category I and 97 to 121 months if he was in Criminal History Category II. Had Mr. Robinson distributed the same quantity of cocaine hydrochloride or powder cocaine, there would have been no statutory mandatory minimum penalty, the applicable offense level would have been Level 15 before a two-level reduction for acceptance of responsibility which would have made it Level 13. The applicable guideline range would have been 12 to 18 months or 15 to 21 months, depending on his criminal history category.

2. Under the safety valve, a defendant facing a mandatory minimum sentence after conviction of certain narcotics offenses is sentenced in accordance with the applicable sentencing guidelines without regard to any statutory mandatory minimum sentence if he or she can show and the Court finds that:

   (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

   (2) the defendant did not use violence or credible threats of violence or possess a firearm

or other dangerous weapon (or induce another participant to do so) in connection with the offense;

   (3) the offense did not result in death or serious bodily injury to any person;

   (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

   (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. The government acknowledges that Mr. Robinson has met the second through the fourth criteria.

3. The probation officer also found that another Superior Court conviction, for contempt, was a misdemeanor and not a felony as originally reported.

itself under U.S.S.G. § 4A1.1(c).[4]

■ Under the Sentencing Guidelines, the Court may depart downward where "reliable information indicates," and the Court concludes, that "a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G. § 4A1.3. *See United States v. Spencer,* 25 F.3d 1105, 1112 (D.C.Cir.1994) (purpose of Section 4A1.3 is to provide court with flexibility where criminal history category significantly over-or under-represents seriousness of defendant's record); *United States v. Allen,* 898 F.2d 203, 204 (D.C.Cir.1990) (per curiam). The Court concludes that this is just such a case.

Putting aside his misdemeanor contempt conviction for failure to obey a condition of release, Mr. Robinson's sole prior offense was a misdemeanor simple possession of heroin conviction at the age of nineteen. He was sentenced to probation under the Youth Rehabilitation Act, and, but for his arrest on this new charge, he successfully completed his probation. While there is no justification for either the heroin possession offense or the instant offense for distribution of cocaine base, both the presentence investigation report and several letters submitted to the Court indicate that the arrest for possession of heroin took place shortly after the death of Mr. Robinson's father from AIDS, which apparently had a profound effect on Mr. Robinson. A neighbor noted, for example, that "[a]fter his father died, he became withdrawn and began to act out." Other letters submitted to the Court from family and friends indicate that prior to his father's death Mr. Robinson was respectful, family-oriented and law-abiding and that he recently has demonstrated responsibility by helping to care for his younger sister and his girlfriend's two year old daughter and has made efforts to correct his anti-social behavior. There therefore is a likelihood that he could benefit and perhaps even be rehabilitated if given a sentence of less than ten years in prison.

For these reasons, the Court concludes that the 1995 misdemeanor heroin possession conviction should not be double-counted— once under U.S.S.G. § 4A1.1(c) for commission of the crime and again under U.S.S.G. § 4A1.1(d) because Mr. Robinson was on probation for that same offense at the time he committed this one. The Court in its discretion finds that the criminal history category resulting from counting the misdemeanor heroin possession conviction twice would "significantly over-represent[] the seriousness of [Mr. Robinson's] criminal history." U.S.S.G. § 4A1.3; *cf. United States v. Clark,* 8 F.3d 839, 845 (D.C.Cir.1993) (court is "free to consider whether a nexus exists between the circumstances of [a defendant's] childhood and his *prior* criminal offenses, for purposes of determining whether the seriousness of his criminal record is overrepresented under § 4A1.3").

■ Having exercised its discretion to make this finding, the Court has authority to adjust the criminal history category downward from one category to another, in this case from Criminal History Category II to Criminal History Category I. *See* U.S.S.G. § 4A1.3 ("Commission intends that the court use, as a reference, the guideline range for a defendant with a higher or lower criminal history category"); *United States v. Clark,* 8

4. Mr. Robinson claims that at the time that he participated in the September 10 debriefing, he (or at least his counsel) thought he only had one criminal history point and was eligible for a benefit by providing information but the government knew he was not. He contends that the Court should disregard the additional two points assigned for commission of the instant offense while on probation because the government obtained information during the debriefing knowing that Mr. Robinson was still on probation and therefore would receive no benefit from participating in the debriefing—a kind of equitable estoppel argument. The Court finds no merit to this claim.

Mr. Robinson's counsel and the government had exactly the same information at the time of the debriefing with respect to the fact of the defendant's 1995 heroin possession conviction, the sentence of probation and the open question whether Mr. Robinson was still on probation at the time of the offense in this case. The government represents that it was acting in good faith at the time of the debriefing, because it did not know what the probation officer's investigation would conclude regarding the status of defendant's probation. The Court finds no reason to doubt the government on these points.

F.3d at 843 (the policy statement in U.S.S.G. § 4A1.3 permits a downward departure from Criminal History Category VI for those who otherwise would qualify as career offenders); *United States v. Allen,* 898 F.2d at 203 (court must consider adjustment to a different criminal history category pursuant to Section 4A1.3 before imposing a sentence that moves beyond the Guideline categories). A change in criminal history category to a Criminal History Category I alone, however, would have no impact on the sentence of a defendant like Mr. Robinson who faces a statutory mandatory minimum sentence of ten years unless the change in criminal history category also authorizes or carries with it a concomitant reduction in criminal history points to the 0–1 points that correspond to a Criminal History Category I.

The government maintains that under the structure of the Sentencing Guidelines the Court may not even look at Section 4A1.3, relating to adequacy of criminal history category, until it first calculates criminal history points under Section 4A1.1 and, further, that, regardless of how the Court views the defendant under Section 4A1.3, the number of points calculated under Section 4A1.1 always remains the same: "The bottom line is that the court simply does not have the authority to tinker with the criminal history points. . . . These are determined based upon the defendant's criminal history, which does not change. . . . ." Transcript of Sentencing Hearing ("Tr.") at 11 (Nov. 19, 1997). Under the government's view, it would be a futile exercise for any defendant who is subject to a mandatory minimum sentence equal to or greater than the applicable guideline range to argue for a Section 4A1.3 downward departure because any such departure would have no effect on his or her sentence. The Court does not agree that Sections 4A1.1 and 4A1.3, both parts of Chapter Four of the Sentencing Guidelines, both relating to criminal history calculations, should be hermetically sealed either from each other or from the safety valve provision of the Guidelines. Indeed, the government's narrow reading of the Guidelines would frustrate Congress'

purpose in enacting the safety valve legislation. Accordingly, the Court concludes that the Section 4A1.3 downward departure leads to a corresponding adjustment in the number of criminal history points and that the adjusted number of criminal history points is the relevant number of points for determining the defendant's safety valve eligibility.[5]

Once a determination is made under Section 4A1.3 that a defendant's criminal history is overstated, it is appropriate under the Guidelines to depart downward from one criminal history category to another. U.S.S.G. § 4A1.3; *see United States v. Clark,* 8 F.3d at 843; *United States v. Allen,* 898 F.2d at 204. Since a particular criminal history category can only be defined by the particular number of criminal history points assigned to that category under U.S.S.G. Ch. 5 Pt. A, it follows that once a Section 4A1.3 analysis leads to a departure from one criminal history category to another, the criminal history points are simultaneously adjusted to correspond with the lower criminal history category. *See* U.S.S.G. Ch. 5 Pt. A, Application Note 3 ("The Criminal History Category is determined by the total criminal history points from Chapter Four, Part A [with exceptions not relevant here] . . ."); *cf. United States v. Jones,* 948 F.2d 732, 734 (D.C.Cir. 1991) (affirming district court's addition of three criminal history points pursuant to Section 4A1.3 for admitted prior criminal conduct that was not prosecuted). Since the Court has determined that Mr. Robinson belongs in a Criminal History Category I, the corresponding number of criminal history points is 0–1. *See* U.S.S.G. Ch. 5 Pt. A, Sentencing Table.

The government argues, however, that a Section 4A1.3 reduction in criminal history category and the number of criminal history points still cannot affect a defendant's eligibility for the safety valve provision. While it does not dispute that Mr. Robinson meets four of the five criteria for application of the safety valve—and the Court finds that he has indeed satisfied these criteria—it argues that he has failed to establish the first crite-

---

5. The Court finds unpersuasive the reasoning of those few courts that have considered this issue. *See United States v. Orozco,* 121 F.3d 628, 630 (11th Cir.1997); *United States v. Resto,* 74 F.3d 22, 27 (2d Cir.1996); *United States v. Valencia–Andrade,* 72 F.3d 770, 773–774 (9th Cir.1995).

ria, that he "does not have more than 1 criminal history point, as determined under the sentencing guidelines" because Mr. Robinson continues to have 2–3 criminal history points regardless of the Court's findings under Section 4A1.3. *See* 18 U.S.C. § 3553(f)(1); U.S.S.G. § 5C1.2(1). In its binding interpretation of the safety valve provision, the Sentencing Commission has defined "more than 1 criminal history point under the sentencing guidelines" to mean "more than 1 criminal history point as determined under § 4A1.1 (Criminal History Category)." U.S.S.G. § 5C1.2, Application Note 1; *see United States v. Plunkett,* 125 F.3d 873, 875 (D.C.Cir.1997) (application notes to Section 5C1.2 binding unless flatly inconsistent with Guideline). From this, the government argues that any change in the number of criminal history points brought about by the application of Section 4A1.3 does not affect Section 5C1.2 eligibility because Section 5C1.2 mentions only Section 4A1.1.

Section 4A1.1 provides the framework by which the Court calculates the number of criminal history points a defendant accumulates for prior offenses and that calculation, in turn, "determine[s] the criminal history category" that applies. U.S.S.G. § 4A1.1. Section 4A1.1 is followed immediately by Section 4A1.2, which defines the terms used in Section 4A1.1 and provides that those definitions "govern the computation of the criminal history points," Commentary to 4A1.1, and by Section 4A1.3, a policy statement providing guidance for departures. The obvious interrelationship between the provisions of Chapter 4 demonstrates that the government is wrong in suggesting that Section 4A1.1 must be considered in isolation. As the Supreme Court noted in *Williams v. United States,* 503 U.S. 193, 200–201, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992), Section 4A1.3 is an "authoritative guide" to the

meaning of Section 4A1.1. *See also United States v. Spencer,* 25 F.3d at 1112–13; *United States v. Beckham,* 968 F.2d 47, 54 n. 4 (D.C.Cir.1992). The reference in Section 5C1.2, the safety valve Guideline, to Section 4A1.1 therefore necessarily includes not only Section 4A1.1 itself, but also the definitions provided by Section 4A1.2 and the guidance provided by Section 4A1.3. Accordingly, the Section 4A1.3 departure guidance must be considered in determining whether Mr. Robinson has met the requirements for treatment under the safety valve.

Reading Section 4A1.1 to include Section 4A1.3 is also consistent with Congress' stated intent in passing the safety valve provision. The fundamental purpose of the safety valve legislation was to "refine the operation of certain mandatory minimum sentencing provisions" for "a narrow class of defendants, those who are the least culpable," in narcotics cases where the mandatory minimum sentence is not warranted and to account for "mitigating factors currently recognized under the federal sentencing guidelines." H.R.Rep. No. 460, 103rd Cong., 2d Sess. 2 (1994).[6] Section 5C1.2, the Guideline's interpretation of the statutory safety valve provision, makes specific reference to Section 4A1.1. In turn, Section 4A1.1 recognizes that the measures provided in Section 4A1.1 for evaluating the seriousness of past crimes are imperfect and that it therefore is appropriate for the Court to consider the factors and information about the significance of past conduct elaborated in Section 4A1.3 "as a basis for imposing a sentence outside the applicable guideline range." *See* U.S.S.G. § 4A1.1, Background. Since the considerations enumerated in Section 4A1.3 are relevant in determining the proper application of the factors enumerated in Section 4A1.1, the reference to Section 4A1.1 in Section 5C1.2

---

**6.** More specifically, Congress was concerned that "mitigating factors that are recognized in the guidelines and generally are considered in drug cases do not apply to the least culpable offenders except in rare instances." H.R.Rep. No. 460, 103rd Cong., 2d Sess. 3 (1994). For instance, low-level dealers, who are the least culpable, seldom have sufficient information about the drug trade to warrant a departure for substantial assistance under U.S.S.G. § 5K1.1, while more

culpable "middle-level" or "kingpin" drug dealers have more information that enables them to negotiate lower sentences. Mr. Robinson is just the kind of person about whom Congress was concerned: he is a low-level dealer who provided information to the government to the best of his ability, but he was not in a position to provide sufficient information for the government to request a Section 5K1.1 departure.

**6**

necessarily contemplates that Section 4A1.3 also will be considered.

The Court concludes that the downward departure pursuant to U.S.S.G. § 4A1.3 places Mr. Robinson in a Criminal History Category I which carries with it a corresponding value of 0–1 criminal history points. *See* U.S.S.G. Ch. 5, Part A, Sentencing Table. With only one criminal history point, Mr. Robinson has satisfied all of the prerequisites for application of the safety valve under 18 U.S.C. § 3553(f); accordingly, the statutory mandatory minimum sentence is not applicable to him and he shall be sentenced in accordance with the Guidelines. *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2.

Because Mr. Robinson meets the criteria of 18 U.S.C. § 3553(f), another provision of the Sentencing Guidelines provides that he also is entitled to a two-level reduction in his offense level. *See* U.S.S.G. § 2D1.1(b)(6) (if the defendant meets the criteria of U.S.S.G. § 5C1.2 and the offense level determined by application of U.S.S.G. § 2D1.1 is 26 or greater, the offense level is decreased by two levels). Accordingly, rather than being at an adjusted offense level of 29, Mr. Robinson is at Level 27; he therefore shall be sentenced in accordance with the guideline range for a defendant with an offense level 27, Criminal History Category I, or a range of 70 to 87 months.

SO ORDERED.